# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| DONALD WAYNE GRAY, | 1:09-cv-01513-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") payments pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 401, *et seq*. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1957, has a General Education Development certificate, and previously worked in construction, was an assembler of component wood, and worked as a farm machine operator. (Administrative Record ("AR") 14, 22-24.) On February 27, 2006, Plaintiff filed an application for SSI payments, alleging disability beginning February 2, 2006, due to a pinched nerve in his lower back, arm pain, and hepatitis C. (AR 87-97.)

In February 2006, Plaintiff was examined by Dr. Mohammed M. Ali. (AR 204-07.) Plaintiff was diagnosed with hepatitis C and a right arm sprain. (AR 204.) Dr. Ali noted that Plaintiff was to consult with Dr. Kumar for further treatment. (*Id.*)

On June 29, 2006, Plaintiff was examined by Dr. Zaky Z. Moussa. (AR 152-55.) Dr. Moussa assessed Plaintiff's blood pressure and the range of motion of Plaintiff's spine and extremities. (*Id.*) In Dr. Moussa's functional assessment, he concluded that "the physical exam shows no objective findings to prevent the patient from doing a full time job with regular breaks." (AR 154).

On July 18, 2006, Plaintiff was examined and evaluated by Dr. Parmod Kumar. Dr. Kumar listed his impression as "Viral hepatits C subtype 2B." (AR 188.) Dr. Kumar stated the following plan for treatment:

> The patient is a candidate for drug intervention. The patient's Social Security case is pending. He has no insurance. I told him I can arrange a compassionate drug program but he is worried that if he has to be hospitalized for further care he has no insurance and he will have to pay all those bills out of his pocket, which I do understand. I told him I would be happy to support his case for disability and Social Security due to viral hepatitis C. He has a lot of systemic side effects of arthralgias,[2] myalgias[3] and weakness. This should qualify him for the benefits. He will make an appointment to see me when everything is through. This letter can be used as a letter of appeal for Social Security.

(*Id.*)

On August 8, 2006, Plaintiff was again examined by Dr. Ali. (AR 186,) Plaintiff presented with complaints of redness, itching, and pain on his right thigh. (*Id.*) Dr. Ali noted that "he always

---

[2] Arthralgia is defined as "pain in a joint." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 152 (31st ed.).

[3] Myalgia is defined as "pain in a muscle or muscles." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1233 (31st ed.).

gets this problem.  He was diagnosed with staph infection in the past and wants some treatment. Otherwise, no other symptoms." (*Id*.)

In September 27, 2006, Dr. Kumar completed a medical report stating that Plaintiff needs MediCal and needs to get the necessary treatment for his hepatitis C.  (AR 184.)  On January 12, 2007, Plaintiff returned for a follow-up evaluation with Dr. Kumar.  (AR 174.)  Dr. Kumar again noted that Plaintiff had not yet received his medications.  (*Id*.)  On January 19, 2007, Plaintiff again presented for follow-up treatment.  (AR 172.)  Dr. Kumar stated that he had "been trying to get from the drug company a compassionate drug program for his medicine for his viral hepatitis C.  He finally got the MediCal denial."  (*Id*.)

On March 26, 2007, Dr. James V. Glaser completed a Physical Residual Functional Capacity ("RFC") Assessment of Plaintiff.  (AR 215-21.)  He found Plaintiff capable of occasionally lifting or carrying 20 pounds and frequently lifting or carrying 10 pounds.  (AR 216.)  Dr. Glaser also reported that Plaintiff could stand or walk for about six hours in an eight-hour work day and that he could sit for a total of about six hours in an eight-hour work day.  (*Id*.)  He noted that Plaintiff's ability to push or pull was unlimited and that Plaintiff had no postural, manipulative, visual, communicative, or visual limitations.  (*Id*.)  However, Dr. Glaser specifically noted his disagreement with Dr. Moussa's assessment that Plaintiff had no limitations in that Dr. Glaser found that Plaintiff was limited by decreased energy due to his diagnosed hepatitis C.  (AR 219.)

On April 20, 2007, Plaintiff was again treated by Dr. Kumar who reported that Plaintiff had a "very severe form of viral hepatitis C with systemic complications of arthralgias, myalgias and abnormal liver function tests."  (AR 167.)  Dr. Kumar explained that Plaintiff was then currently being treated with chemotherapy and had symptoms including: (1) severe arthralgias and myalgias, (2) severe depression, (3) insomnia, (4) loss of appetite, and (5) flu-like symptoms.  (*Id*.)  He stated that "[a]ll of the above symptoms are related to the underlying viral hepatitis C as well as side effects of chemotherapy.  This patient is unable to have gainful employment.  I have given him disability and he is advised to apply for disability benefits."  (*Id*.)

On April 27, 2007, Plaintiff was examined by Dr. Mohammed Ali and complained of swelling and pain of the upper back.  Dr. Ali noted that, otherwise, there were no symptoms.  (AR

165.) Dr. Ali, however, advised Plaintiff to follow up with Dr. Kumar regarding his hepatitis C. (*Id.*)

On May 16, 2007, Dr. Kumar wrote a letter regarding his treatment of Plaintiff. Dr. Kumar's letter provided, *inter alia,* the following:

> In his earnest [sic] he really wants to work, but physically he is incapable of performing any gainful employment. My plea to you is that he be granted some sort of help from your court. He can't even afford an attorney to present his case to you. I hope you will take a compassionate view on my patient's plea for help and hopefully in your court he will get the necessary favorable decision.

(AR 160.)

On September 14, 2007, Plaintiff was again examined by Dr. Kumar who noted that "he still feels very, very bad." (AR 238.) Dr. Kumar listed in his treatment plan that there was not much that he could do for the side effects or for the symptoms of Plaintiff's disease. (*Id.*) Dr. Kumar opined that "[Plaintiff] remains disabled and unable to have gainful employment. (*Id.*) Hopefully the social services department will be compassionate enough to grant this patient the help he needs." (*Id.*)

On April 9, 2008, Dr. Kumar completed a "physical capacities evaluation" regarding Plaintiff. (AR 225.) Dr. Kumar reported that Plaintiff could sit one hour in an eight-hour work day. (*Id.*) Plaintiff was limited to lifting or carrying up to ten pounds only occasionally and never lifting anything heavier than 10 pounds. (*Id.*) Plaintiff was able to perform no fine manipulation and could not climb, kneel, or stoop. (*Id.*) Dr. Kumar described Plaintiff as having a "poor" ability to (1) understand and carry out simple one- or two-step job instructions, (2) deal with the public, (3) maintain concentration and attention for at least two-hour increments, (4) withstand stress and pressures associated with an eight-hour work day and day-to-day work activity, and (5) handle funds. (AR 227.) Dr. Kumar noted that Plaintiff's expected prognosis was "very poor" and that his response to treatment was also "poor." (AR 228.) Dr. Kumar also provided a diagnosis of end-stage liver disease. (AR 226, 228.)

On April 30, 2008, Plaintiff's sister, Karen Gray, provided a written statement of her lay observations of Plaintiff's condition and limitations. (AR 150-51.) Ms. Gray explained that as Plaintiff's hepatitis C has worsened, "his body gets winded easily and his legs give out easily. He has always been a really good mechanic. His illness is [l]iver[-]related and so now his hands swell

and make it impossible to do what he knows best." (AR 150.) She stated that Plaintiff needs medical help, but he cannot afford it. (AR 151.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 60-70.) On May 6, 2008, ALJ Christopher Larson held a hearing where Plaintiff and Vocational Expert ("VE") Ms. Najarian[4] provided testimony. (AR 11-23.)

The VE provided testimony characterizing Plaintiff's past employment positions as follows: (1) his work as a construction worker was medium,[5] unskilled work as he performed it; (2) his work as an assembler of component wood was light,[6] semi-skilled work as he performed it; (3) his work as a furniture assembler was medium, semi-skilled work; and (4) his work as a farm machine operator was heavy,[7] semi-skilled work. (AR 14, 45-48.)

Plaintiff testified that he stopped working in 2006 because he could not lift the amount of weight to continue his work with the roofing company. (AR 25.) The roofer tried to reassign him to a clean-up position, but he "couldn't do that either, [because] I ran out of wind, I was just out of energy." (AR 25.) Plaintiff stated that he could only concentrate for 10 to 15 minutes at a time, and, due to this, he "doubted" whether he could work any job. (AR 29, 39.) He has a lower back injury that causes numbness down his left leg, and his right shoulder was injured such that it is difficult to lift items above a certain height. (AR 30.) He has hepatitis C that causes him fatigue, and he has started an interferon treatment for the condition. (AR 32.) In a typical day, he sits in a chair,

---

[4] The first name of the Vocational Expert was not identified in the record.

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, [the Commissioner] determine[s] that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

watches television, perhaps washes dishes, reads, plays guitar, and attends daily meetings. (AR 33-35.) He suffers from pain "all the time" and headaches every day. (AR. 38.) He cooks and cleans for his uncle, and he does the grocery shopping. (AR 39-40.)

On September 3, 2008, the ALJ issued a decision, finding Plaintiff not disabled since he applied for benefits on February 27, 2006. (AR 7-15.) Specifically, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since he applied for SSI; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform his past relevant work; (5) has the RFC to perform light work; and (6) can perform jobs that exist in significant numbers in the national economy. (AR 7-15.) Plaintiff sought review of this decision before the Appeals Council, but on July 4, 2009, the Appeals Council denied review. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

On August 26, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues that the ALJ erred by failing (1) to articulate specific and legitimate reasons for not crediting Dr. Kumar's opinion and (2) to adequately consider the lay testimony of Plaintiff and his sister.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## REVIEW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

has sufficient RFC despite the impairment or various limitations to perform her past work.[8]  *Id.* §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    The ALJ's Consideration of the Medical Evidence of Record**

**1.    Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.  *Id.*  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions.  *Id.*  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Tommasetti*

---

[8] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1  *v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).   The ALJ must do more than offer his conclusions.
2  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.
3  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).   Therefore, a treating physician's opinion
4  must be given controlling weight if it is well supported and not inconsistent with the other substantial
5  evidence in the record.  *Lingenfelter*, 504 F.3d at 1038 n.10.

**2.   Analysis**

Plaintiff alleges that the ALJ improperly rejected the opinion of his treating physician, Dr. Kumar, by failing to state legitimate and specific reasons for doing so.

The ALJ gave probative weight to the opinion of state agency physician, Dr. Glaser, but discounted the opinion of Dr. Kumar. (AR 14.) The ALJ found Dr. Kumar's opinion to be of less probative value because it appeared to be more of a statement of compassionate advocacy than an objective medical opinion of Plaintiff's condition and limitations. (AR 14 ("For all these reasons, it is hard to tell whether Drs. Kumar and Ali genuinely believe Mr. Gray meets the regulatory definition of disability, or whether they are simply trying to help him through difficult financial circumstances in order to give him better treatment.").)   The ALJ considered several factors in making this finding. For example, the ALJ noted that Dr. Kumar diagnosed depression yet there are no subjective complaints recorded from Plaintiff regarding depressive symptoms. (*See* AR 240 (listing depression as one of Plaintiff's symptoms from chemotherapy treatment for hepatitis).)   The ALJ also explained that in Dr. Kumar's June 2008 opinion he described disabling physical limitations in a questionnaire that cites no supportive findings. (AR 13, 225-28.)   The ALJ also found that while Dr. Kumar reported in July 2006 that Plaintiff suffered "a lot of systemic side effects" (AR 188), Drs. Moussa and Ali, who examined Plaintiff in June 2006 (AR 152-55) and August 2006 (AR 186), respectively, did not find or record similar symptoms or limitations (AR 14). In fact, Dr. Ali[9] stated that beyond an infection he observed on examination of Plaintiff, he noted "no other symptoms." (AR 186.)

---

[9] Interestingly, the ALJ seemed to find that Dr. Ali's opinion was also less than objective because it was "hard to tell whether Drs. Kumar and Ali genuinely believe Mr. Gray meets the regulatory definition of disability, or whether they are simply trying to help him through difficult financial circumstances in order to give him better treatment." (AR 14.) Yet, the ALJ points to Dr. Ali as finding "no other symptoms" on examination of Plaintiff other than an infected right thigh as a reason to reject Dr. Kumar's findings of various limiting symptoms.

9

Further, the ALJ noted that his finding that Dr. Kumar's opinion was difficult to credit as fully medically objective was also supported by Dr. Kumar's explicit willingness to support Plaintiff's claim for disability. (*See, e.g.,* AR 160 ("In his earnest [sic] he really wants to work, but physically he is incapable of performing any gainful employment. My plea to you is that he be granted some sort of help from your court. He can't even afford an attorney to present his case to you. I hope you will take a compassionate view on my patient's plea for help and hopefully in your court he will get the necessary favorable decision."), 167 ("This patient is unable to have gainful employment. I have given him disability and he is advised to apply for disability benefits.").)

The ALJ is not permitted to infer that a doctor is biased without adequate supporting evidence. Rather, there must be some bias evidenced in the record such as inconsistencies between a report and treating notes. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting source of patient's referral was improper basis for assessing doctor's credibility, where doctor's opinion was based on examination, and no inconsistencies between report and treating notes); *Lester*, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."). Moreover, in the absence of other evidence to undermine the credibility of a medical report, the fact that a medical record is obtained and proffered to support a claimant's disability claim is not a proper basis to reject that medical record. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998).

Here, the ALJ's finding of bias is not predicated entirely on the fact that Dr. Kumar's opinions were expressly offered in support of Plaintiff's claim for disability. Were that the case, the ALJ's finding of bias would merely be an inference not supported by the record. *See id*. Rather, the ALJ pointed to several specific and legitimate reasons that the ALJ determined impacted Dr. Kumar's credibility. The ALJ identified (1) inconsistencies between symptoms noted by Dr. Kumar and those noted by Drs. Ali and Mousssa, (2) conclusions by Dr. Kumar as to Plaintiff's limitations that were not supported by any medical findings, and (3) inconsistencies between symptoms actually reported by Plaintiff and what Dr. Kumar diagnosed (i.e., depressive symptoms). Unlike the ALJ's findings in *Nguyen* and *Lester*, the ALJ's credibility finding regarding Dr. Kumar was based on more than the fact that Dr. Kumar submitted his reports in an effort to assist Plaintiff in obtaining

benefits. For these reasons, the Court cannot conclude that the ALJ's credibility finding as to Dr. Kumar was unsupported. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld.") (citation omitted).

The Court's review does not end here, however, because the ALJ's analysis of the remaining medical evidence is problematic. In concluding that Plaintiff could perform light work, the ALJ gave dispositive weight to Dr. Glaser's opinion that Plaintiff could perform a full range of light work. (AR 14). The Court finds that the record does not contain substantial evidence to support Dr. Glaser's opinion. *See Ryan*, 528 F.3d at 1201 ("The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'") (citation omitted).

First, Dr. Glaser's opinion regarding Plaintiff's limitations was not based on an examination of Plaintiff. Here, as in *Ryan*, Dr. Glaser's opinion essentially consisted of a series of boxes checked on a form. (*See* AR 215-21). Dr. Glaser provides no explanation or supporting findings or rationale as to why Plaintiff was capable of light work, given the limitations he noted arising from Plaintiff's hepatitis C condition.

Dr. Glaser's opinion is not completely unsupported in that Dr. Moussa, an examining physician, determined there were "no objective findings to prevent this patient from doing a full time job with regular breaks." (AR 154.) However, Dr. Glaser specifically takes issue with Dr. Moussa's finding in this regard. Dr. Glaser checked a box in his report indicating that his conclusions about the claimant's limitations were "substantially different" from Dr. Moussa's opinion. (AR 219.) Dr. Glaser explained his response noting that the "6/06 IMCE[10] gives no limits. Clmt does have dx of Hep C and c/o decreased energy in line with dx and clmt is in need of Hep C tx which he is unable to obtain 2nd to lack of insurance." (*Id*.) Essentially, the evidence that supports Dr. Glaser's opinion, i.e., Dr. Moussa's opinion, was specifically rejected by Dr. Glaser in relevant respects. Moreover, the ALJ gave no weight to Dr. Moussa's opinion and did not discuss

---

[10] This apparently is short for "Internal Medicine Comprehensive Examination" that was performed on June 29, 2006, by Dr. Moussa. (AR 152.)

11

it with the exception of noting Dr. Moussa's conclusion for purposes of rejecting Dr. Kumar's opinion. (*See* AR 14.)

Second, Dr. Glaser's opinion was based on a review of records that included Dr. Kumar's opinions and was also based on Plaintiff's complaints of pain and decreased energy, both of which Dr. Glaser appeared to accept, at least in part. (*See* AR 221.) Yet, the ALJ specifically rejected Dr. Kumar's opinions, found Plaintiff's testimony about his pain and limitation to be "not entirely credible," and did not discuss Dr. Moussa's opinion or rely on it in making his ultimate finding that Plaintiff could perform light work. Thus, the Court is left to review an ALJ decision that gives dispositive weight to Dr. Glaser's non-examining "check-box" opinion (whose ultimate conclusions are not explained or supported). This opinion is, in turn, based on (1) findings made by a treating physician (Dr. Kumar) whose opinion was specifically rejected by the ALJ, and (2) testimony of a claimant the ALJ found not credible (a finding that is itself, as explained *infra*, unsupported). Further, Dr. Glaser's opinion conflicts to a relevant degree with the only unrejected examining physician's opinion, Dr. Mousse, that appears to support it.

While the ALJ's ultimate conclusions regarding Plaintiff's RFC are not necessarily incorrect, the Court has difficulty concluding that substantial evidence in the record supports Dr. Glaser's opinion. Dr. Glaser's opinion provides no supporting rationale, given Plaintiff's noted limitations, why Plaintiff is still able to perform light work. Fundamentally, while Dr. Moussa appeared to agree with Dr. Glaser that Plaintiff is not limited from all employment, the ALJ did not give any weight to Dr. Moussa's opinion or discuss it other than to note Dr. Moussa's conclusion. (AR 14.) Further, Dr. Glaser explicitly disagreed with Dr. Moussa's findings regarding no limitations. (AR 221.)

The Court concludes that the ALJ has not met his burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan*, 169 F.3d at 600-01. For that reason, the matter will be remanded so that the ALJ may again consider the medical evidence of record and provide findings that are supported by substantial evidence. In remanding the matter for additional consideration, Plaintiff may submit additional medical evidence, including a medical statement from Dr. Kumar explaining and supporting his prior findings and any reason for the inconsistencies between his opinion and that

of Drs. Moussa and Ali. Also, the ALJ may seek any additional medical evidence necessary to make a decision on the claim.

### B. The ALJ's Consideration of Lay Testimony

#### 1. Testimony of Karen Gray

Plaintiff presents a one-sentence argument that the ALJ impermissibly rejected the lay statements of his sister, Karen Gray, in finding that they were medical statements from a non-medical source. Plaintiff argues that "[t]his violates Social Security Ruling 06-3p." [11] (Plaintiff's Brief ("Br.") at 11.) SSR 06-3p provides that statements by the claimants and the statements of others about the claimant's impairment(s) and how they affect the individual's functioning will be considered in making a disability determination. SSR 06-3p. Ms. Gray opined that Plaintiff's hepatitis C had worsened and that Plaintiff got winded easily, his legs gave out easily, and his hands swelled, making it impossible to do what he knows best. (AR 154-55.) The ALJ gave little weight to these statements, finding that Ms. Gray was not an acceptable medical source and her statement was not quantified. (AR 13.)

Lay testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account, *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), unless he expressly states a reason to disregard such testimony that is specific and germane to that particular witness. *Nguyen*, 100 F.3d at 1467. A lay person, even though not a vocational or medical expert, is not disqualified from providing his personal observations about how a claimant's condition limits his or her ability to perform basic work activities. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

Here, the ALJ stated he gave little weight to Ms. Gray's testimony because, *inter alia*, she was not "an acceptable medical source." Pursuant to *Bruce*, *Nguyen*, and *Dodrill*, *supra*, the ALJ may not reject lay statements as to a claimant's observable symptoms simply because the lay person is not a medical expert. Thus, this reason to reject Ms. Gray's testimony was not legitimate.

---

[11] Social Security Rulings do not have the force of law. *Paxton v. Sec'y of Health & Human Servs.*, 856 F.2d 1352, 1356 (9th Cir. 1998). However, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations. Therefore, courts will defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Act or regulations. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

The ALJ also stated that Ms. Gray's statements were given little weight because they were not "quantified." In *Bruce,* the claimant's wife provided specific statements about her husband's limitations, such as his refusal to leave the bedroom, bathe, and eat because of his severe depression and his need to lie down. 557 F.3d at 1116. The Ninth Circuit found that this testimony was relevant to how the claimant's condition affected his ability to perform basic work activities and, therefore, should have been considered by the ALJ. *Id.*

However, as the ALJ pointed out, Ms. Gray's statements about Plaintiff's limitations are not quantified. For example, it is difficult to know how Plaintiff's getting winded "easily" or that his legs give out "easily" or his hands "swelled" impacts his ability to work at any job. Unlike the testimony that was considered in *Bruce,* Ms. Gray's testimony does not provide an indication of how Plaintiff's limitations would affect his ability to work because they are not quantified in any way. Further, the ALJ ultimately agreed with Ms. Gray's statements in that he found Plaintiff was unable to perform any of his past relevant work (arguably what Ms. Gray described as "what [Plaintiff] knows best"), *see* AR 14 ("I find the demands of Mr. Gray's past relevant work exceed his residual functional capacity as stated above."), but determined that Ms. Gray's statements are not quantified to show whether Plaintiff is significantly limited from performing any work, given his RFC – the relevant question before the ALJ here. For that reason, the ALJ did not err in giving "little weight" to Ms. Gray's statements.

### 2. Plaintiff's Testimony

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms "not entirely credible." Plaintiff argues that the ALJ gave no reasons to support this finding. (Plaintiff's Br. at 11 ("The ALJ did not give a reason why [Plaintiff's testimony was not entirely credible].").) Plaintiff argues that the Court should, therefore, "deem that testimony as true," reverse the ALJ's decision, and award him benefits. (Plaintiff's Br. at 11-12.) The Commissioner argues that the ALJ gave specific rationale for discounting Plaintiff's testimony including: (1) the objective medical evidence did not support Plaintiff's alleged symptoms and limitations; (2) Plaintiff did not take any medication for his impairments other than medication for motion sickness; and (3)

Plaintiff's daily activities were inconsistent with his claimed total disability. (Commissioner's Br. at 11-13.)

The only portion of the ALJ's decision discussing Plaintiff's testimony is as follows:

> Mr. Gray testified he was diagnosed with hepatitis C in February 2006. He started treatment in May[] 2007, and finished in October[] 2007. Mr. Gray stated he did not know if he could work an 8-hour day, because he cannot focus and forgets what he reads. He also alleged a low back problem and right shoulder pain. He stated his doctor told him he may need a liver transplant, but he is not on the transplant list, and does not have the money to pay for it. He stated he is currently not on any medications. He testified he takes care of his personal needs, cooks, washes the dishes, cleans the house, does the laundry once a week, goes shopping once a month, watches television, rests, takes a two-to four-hour nap in the afternoon, plays the guitar, and goes to nightly meetings. In a medications list received in April[] 2008, Mr. Gray listed only over-the-counter medication for motion sickness relief.

(AR 13.)

The ALJ did not adequately analyze Plaintiff's testimony in reaching his ultimate conclusion that Plaintiff's "statements about the intensity, persistence, and limiting effects of those symptoms are not entirely credible." (AR 13.) While the ALJ provided the applicable law and summarized Plaintiff's testimony, no rationale or analysis is provided supporting the ALJ's ultimate credibility finding. The Commissioner's argument that the ALJ provided specific reasons for discounting Plaintiff's testimony are reasons not discussed or analyzed by the ALJ; it is merely rationale based on the ALJ's summary of Plaintiff's testimony. In this regard, the ALJ's decision is not conducive to judicial review. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss). The ALJ must provide an analysis supporting his ultimate conclusion that Plaintiff's "statements about the intensity, persistence, and limiting effects of those symptoms are not entirely credible." (AR 13.)

**3.   Remand Is Required**

The ALJ did not provide clear and convincing reasons based on substantial evidence in the record to discount Plaintiff's testimony as "not entirely credible." In light of this, Plaintiff argues that his testimony should be deemed true. Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Courts retain flexibility, however, in applying this crediting-as-true theory. *Connett*, 340 F.3d at 876 (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). As the Ninth Circuit pointed out in *Connett*, a remand for further findings regarding the credibility of a Plaintiff is an appropriate remedy. *See Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc) (specifically affirmed district court's order remanding for further proceedings where ALJ failed to explain with sufficient specificity the basis for rejecting claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) ("We therefore remand this case to the ALJ for further findings evaluating the credibility of [the claimant's] subjective complaints . . . ."); *Dodrill*, 12 F.3d at 919 (specifically remanding for ALJ to "articulat[e] specific findings for rejecting [the claimant's] pain testimony and the testimony of lay witnesses").

Here, there are insufficient findings regarding whether Plaintiff's testimony should be credited as true, and the matter must also be remanded for the ALJ to provide sufficient findings related to the medical evidence of record. Accordingly, pursuant to *Connett, Bunnell, Byrnes,* and *Dodrill*, *supra*, the Court will order that the matter be remanded to the ALJ for findings relating to Plaintiff's credibility.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case is REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Donald W. Gray and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   December 16, 2010**            /s/ Sheila K. Oberto
                                    UNITED STATES MAGISTRATE JUDGE